JUSTICE GRAY
delivered the Opinion of the Court.
Shodair Hospital (Shodair) appeals from an order of the First Judicial District Court, Lewis and Clark County, reversing a decision of the Board of Social and Rehabilitation Services Appeals (Board) which awarded Shodair medicaid reimbursement for a patient’s hospitalization and reinstating the hearing examiner’s decision which denied reimbursement. We affirm.
We restate the issues on appeal as follows:
1. Did the District Court err in rejecting the Board’s finding that Shodair had met the Medicaid Inpatient Psychiatric Services manual criteria?
2. Does substantial evidence support the hearing examiner’s finding that Shodair failed to meet the MIPS manual criteria?
3. Does compliance with the MIPS manual criteria equate to a “significant danger” to the patient or others determination under § 46.12.590(2)(k), ARM (1991), thereby entitling a treatment provider to medicaid reimbursement for a patient’s treatment?
4. Does substantial evidence support the hearing examiner’s finding that Shodair was not entitled to medicaid reimbursement for D.B.B.’s inpatient psychiatric care because it failed to demonstrate that D.B.B. posed a significant danger to herself, others, or the public safety as required by § 46.12.590(2)(k), ARM (1991)?
5. Was D.B.B.’s treatment at Shodair “medically necessary” under § 46.12.102(2), ARM (1991)?
Issues three through five are dependent on a determination of error on issue two. Thus, our holding below that substantial evidence supports the hearing examiner’s finding that Shodair failed to meet *158 the MIPS manual criteria is dispositive and we need not address the remaining issues.

Factual and Procedural Background

D.B.B., a sexually, physically, and emotionally abused eight-year-old girl, was admitted to Shodair on August 8, 1991, for inpatient psychiatric treatment of post-traumatic stress disorder. D.B.B. was discharged from Shodair to a foster home on September 19, 1991. Shodair applied to the Department of Social and Rehabilitation Services Medicaid Services Division (SRS) seeking medicaid reimbursement for D.B.B.’s treatment. SRS reimbursed Shodair for inpatient treatment provided to D.B.B. from August 8, 1991, through August 23, 1991. It denied reimbursement for the later portion of D.B.B.’s treatment, based on its determination that inpatient services were not medically necessary during that time. This case involves Shodair’s effort to obtain reimbursement from SRS under the state medicaid inpatient psychiatric services program for the later portion of D.B.B.’s inpatient treatment.
Pursuant to 42 U.S.C.A. § 1396a(30)(A) (West Supp. 1995), states are required to implement procedures regarding the utilization of, and reimbursement for, services rendered under a state medical assistance plan; the purpose of the procedures is to protect against unnecessary use of services and “assure that payments are consistent with efficiency, economy, and quality of care.” One aspect of such a state plan is the creation of “a statewide surveillance and utilization control program” that, among other things, must safeguard against excess medicaid payments. 42 C.F.R. § 456.3(a) (1994). SRS is the state agency responsible for creating and managing the utilization program to “ensur[e] that services provided through the medicaid program are ... consistent with both state and federal laws, rules, and regulations establishing the conditions of reimbursement.” Section 46.1.101(2)(c)(iii), ARM.
Section 46.12.590(3), ARM (1991), authorizes medicaid reimbursement for hospital inpatient psychiatric care if a person’s psychiatric condition “pose[s] a significant danger to self, others, or the public safety.” Section 46.12.590(2)(k), ARM (1991). The treatment must be provided under the direction of a physician and must be designed to discharge the patient to a less restrictive setting as soon as possible. Section 46.12.590(2)(k), ARM (1991).
SRS contracted with Mental Health Management of America (MHMA) to develop and implement a utilization management pro *159 gram to review inpatient psychiatric treatment services provided to medicaid recipients under the age of 21 pursuant to the Montana Medicaid Inpatient Psychiatric Services Under 21 program (MIPS). Pursuant to the contract, MHMA developed a MIPS manual for use by reviewers of medicaid reimbursement claims under the program. The manual, which was distributed to inpatient psychiatric treatment providers, including Shodair, contained criteria relating to reimbursement for hospital inpatient psychiatric treatment. The listed criteria require treatment providers to demonstrate, with regard to a patient’s inpatient psychiatric treatment, that they have: (1) diagnosed the patient as having an Axis I mental disorder delineated in the Diagnostic and Statistical Manual Third Edition-Revised (DSM-III-R); (2) obtained a DSM-III-R Axis V rating of 50 or less regarding the patient’s functional level; (3) developed a description of the treatment and discharge plan; and (4) identified and documented one of four specific problem areas.
In this case, SRS initially denied reimbursement for the later portion of D.B.B.’s inpatient treatment at Shodair. Shodair requested, and received, a “fair hearing” pursuant to § 46.12.1210(2), ARM (1991), after which the hearing examiner issued extensive findings of fact, conclusions of law and an order denying reimbursement. The hearing examiner determined that Shodair did not meet the MIPS manual criteria relating to reimbursement for hospital inpatient psychiatric treatment.
Shodair appealed to the Board, which summarily reversed the hearing examiner’s decision. The Board found that, based on the “undisputed facts” of record, Shodair had met the MIPS manual criteria as a matter of law and that satisfying those criteria also satisfied the “significant danger” requirement contained in § 46.12.590(2)(k), ARM (1991). As a result, the Board determined that Shodair was entitled to medicaid reimbursement for the later portion of D.B.B.’s inpatient psychiatric treatment.
SRS petitioned for judicial review of the Board’s decision. The District Court concluded that the hearing examiner had impliedly, and correctly, determined that Shodair failed to satisfy one of the MIPS manual criteria relating to reimbursement for hospital inpatient psychiatric treatment. The court also concluded that the Board erred in summarily rejecting the hearing examiner’s findings and in determining that meeting the MIPS criteria was sufficient to establish that a patient poses a “significant danger” under § 46.12.590(2)(k), ARM (1991). The District Court reinstated the *160 hearing examiner’s decision denying medicaid reimbursement for D.B.B.’s treatment at Shodair from August 23 to September 19,1991. Shodair appeals.
1. Did the District Court err in rejecting the Board’s finding that Shodair had met the Medicaid Inpatient Psychiatric Services manual criteria?
Shodair contends that the District Court erred in reinstating the hearing examiner’s decision denying Shodair medicaid reimbursement. It argues that the Board correctly rejected the hearing examiner’s findings and conclusions and awarded Shodair reimbursement for D.B.B.’s stay. SRS argues that the Board did not comply with § 2-4-621(3), MCA. The District Court determined that the Board violated § 2-4-621(3), MCA, and we agree.
Section 2-4-621(3), MCA, prohibits the Board from rejecting or modifying the hearing examiner’s findings of fact unless it states with particularity that the findings were not based on competent substantial evidence. Nowhere in the Board’s brief order does it reject or modify any of the hearing examiner’s extensive findings, much less state with particularity that the finding or findings were not based on competent substantial evidence. Instead, the Board summarily reversed the hearing examiner’s decision, stating that it “finds that based on undisputed facts in the record,” Shodair met the MIPS manual criteria as a matter of law.
The purpose of § 2-4-621(3), MCA, as is the case with many of this Court’s standards of review, is to prevent a reviewing body from substituting its judgment for that of the factfinder. Here, the Board’s order merely substitutes its judgment for that of the hearing examiner with regard to findings of fact; in doing so, the Board violated § 2-4-621(3), MCA.
Section 2-4-704(2)(a)(vi), MCA, authorizes a reviewing court to reverse the Board’s decision if it was “arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion[.]” A rejection of a hearing examiner’s findings in violation of § 2-4-621(3), MCA, constitutes an abuse of discretion under § 2-4-704(2)(a)(vi), MCA. Brander v. Mont. Dep’t of Institutions (1991), 247 Mont. 302, 308, 806 P.2d 530, 533.
Thus, we conclude that, in violating § 2-4-621(3), MCA, the Board abused its discretion. We further conclude, on that basis, that the District Court did not err in reinstating the hearing examiner’s extensive finding of fact for purposes of judicial review.
*161 2. Does substantial evidence support the hearing examiner’s finding that Shodair failed to meet the MIPS manual criteria for hospital inpatient psychiatric treatment?
Shodair and SRS disagree regarding whether satisfying the MIPS manual criteria also suffices to meet the “significant danger” requirement of § 46.12.590(2)(k), ARM (1991), and the “medical necessity” requirement of § 46.12.102(2), ARM (1991), for medicaid reimbursement as a matter of law. It is undisputed, however, that a provider of inpatient psychiatric services must satisfy the four criteria contained in the MIPS manual to establish entitlement to medicaid reimbursement for an individual’s inpatient psychiatric treatment.
The parties do not dispute that Shodair established, and the hearing examiner correctly found, that D.B.B.’s condition met three of the four MIPS manual criteria. They disagree on whether Shodair met the fourth criterion of identifying and documenting a listed problem area; specifically, whether Shodair established the problem area entitled “Impaired Safety: Threat to Self or Others.” Under the MIPS manual, the Impaired Safety problem area consists of three components: (1) verbalization or gestures of intent to harm self or others, caused by a mental disorder; (2) threats accompanied by depressed mood, recent loss, recent suicide attempt or gesture, or concomitant substance abuse; and (3) verbalization escalating in intensity, or verbalization of intent accompanied by gesture or plan. Each of the components must be established in order to satisfy the fourth MIPS manual criterion.
A. Implied Finding
This Court has adopted the doctrine of implied findings for purposes of reviewing findings of fact. Interstate Brands Corp. v. Cannon (1985), 218 Mont. 380, 384, 708 P.2d 573, 576. That doctrine provides that where the “findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence.” Interstate Brands, 708 P.2d at 576 (citations omitted). We apply the doctrine only if the implied findings are consistent with express findings. Interstate Brands, 708 P.2d at 576.
For the most part, the hearing examiner addressed the components of the Impaired Safety problem area in a systematic manner. With regard to the first component, the hearing examiner expressly found that D.B.B. had verbalized an intent to harm both others and herself and that these threats were probably caused by her mental disorder. Under the second component, relating to the patient’s recent *162 loss, the hearing examiner found that D.B.B.’s threats were accompanied by “the recent loss of her family ... loss of self and loss of self-esteem.”
The third component is comprised of two alternatives: the patient’s verbalization of intent to harm self or others must be accompanied by gestures or plans or escalating in intensity. The hearing examiner expressly found that the record did not support a finding that D.B.B.’s verbalizations of intent to harm herself or others were accompanied by gestures or plans or a finding that verbalizations of intent to harm herself escalated in intensity. Shodair does not dispute the finding related to verbalizations accompanied by gesture or plan and, for purposes of appeal, has conceded that the record does not support a finding that D.B.B.’s verbalizations of intent to harm herself had escalated in intensity. Thus, the only portion of the third component of the Impaired Safety problem area at issue is whether D.B.B.’s verbalizations of intent to harm others escalated in intensity.
The hearing examiner did not make an express finding regarding the “escalating in intensity” factor. She continued her discussion regarding the third component by finding that D.B.B. had harmed peers, including one incident which could have posed a danger, but that Shodair’s treatment after the incident rendered the event insignificant. She also found that D.B.B. did not have a serious intent to harm and that she was not frequently violent. Shodair does not challenge these express findings. The hearing examiner concluded by finding that “[criterion] (4) of the Department’s criteria for hospital inpatient psychiatric treatment has not been met.”
The hearing examiner made systematic, express, and undisputed findings that the first two Impaired Safety problem area components had been established and that portions of the third component had not been established. Those express findings, together with her finding that Shodair failed to establish the fourth MIPS manual criterion, permitted the District Court to determine that the hearing examiner had necessarily found that the escalating in intensity portion of the third component had not been established, if such a finding is supported by the evidence. See Interstate Brands, 708 P.2d at 576. This is so because the finding that D.B.B.’s verbalizations were not escalating in intensity was necessary for the examiner’s ultimate finding that the MIPS manual criteria were not met. Moreover, the implied finding is entirely consistent with the express findings made by the hearing examiner and with the general finding that Shodair failed to meet the fourth MIPS manual criterion. See *163 Interstate Brands, 708 P.2d at 576. Thus, all that remains is to determine whether the implied finding is supported by substantial credible evidence.
B. Substantial Evidence
An implied finding must be not only necessary to the judgment, but also supported by the evidence. Interstate Brands, 708 P.2d at 576. When reviewing an administrative agency’s findings of fact, courts defer to the agency’s findings unless they are clearly erroneous. Section 2-4-704(2)(a)(v), MCA; Westmoreland Resources v. Dep’t of Revenue (1994), 263 Mont. 303, 310, 868 P.2d 592, 596. Generally, findings of fact are not clearly erroneous if they are supported by substantial credible evidence. Westmoreland Resources, 868 P.2d at 596. Substantial evidence must be more than a scintilla, but may be less than a preponderance, of evidence. Miller v. Frasure (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1261.
Both Shodair’s records of D.B.B.’s hospitalization and expert testimony at the hearing provide substantial evidence supporting the implied finding that D .B .B ,’s intent to harm others was not escalating in intensity. D.B.B.’s hospitalization records documented that in forty-three days of hospitalization, she was involved in five or six disputes with staff members or peers. These incidents involved yelling obscenities at a staff member, “invading another peer’s space,” discussion of how she feared she would kill someone if she returned home, and shoving a peer during an activity. The medical records establish that D.B.B.’s physical conflicts were infrequent and that she had not seriously injured an individual.
In addition, Dr. Larry Osborn (Osborn) testified that, based on his review of the medical records, Shodair failed to document that D.B.B. had verbally threatened or promised to hurt someone and did not demonstrate how any of D.B.B.’s verbalizations escalated in intensity. He opined that, although D.B.B.’s recreation often contained some violent aspect, nothing in the record confirmed that she took the initiative or had the means to hurt her peers. He also suggested that the record supported a conclusion that D.B.B. learned not to express her anger in an inappropriate manner, such as hitting an individual, but to redirect her anger in a positive manner by punching pillows or taking “time out.” In Osborn’s opinion, nothing in D.B.B.’s medical record established that D.B.B. was impulsive, violent, or dangerous to others.
The record contains substantial credible evidence supporting a finding that Shodair failed to establish that D.B.B.’s verbalizations *164 of intent to harm others escalated in intensity and, therefore, failed to establish the third Impaired Safety component. Such a finding is consistent with the hearing examiner’s findings — not disputed here — that D.B.B. lacked serious intent to harm and was not frequently violent and with her general express finding that Shodair failed to meet the fourth MIPS manual criterion.
Shodair relies on other evidence of record to support its position that D.B.B.’s verbalization of intent to harm others increased in intensity. “We will not substitute our judgment for that of the [fact finder] even where there is evidence in the record to support contrary findings.” Estate of Alcorn (1994), 263 Mont. 353, 360, 868 P.2d 629, 633. Thus, we decline to review Shodair’s citations to the record and to determine whether that evidence supports the finding Shodair advocates.
We conclude that the District Court did not err in determining that the hearing examiner had impliedly found that Shodair did not establish the “escalating in intensity” component and that the implied finding was supported by substantial credible evidence and was not clearly erroneous. We further conclude that the hearing examiner did not err in determining, on that basis, that Shodair failed to meet the MIPS manual criteria. We hold, therefore, that the District Court did not err in reinstating the hearing examiner’s decision which denied Shodair medicaid reimbursement for the later portion of D.B.B.’s inpatient psychiatric treatment.
Affirmed.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON, WEBER and District Judge MIZNER concur.